**THIS DISPOSITION IS BEING RE-ISSUED TODAY TO REPLACE THE DISPOSITION PREVIOUSLY ISSUED DUE TO A TYPOGRAPHICAL ERROR**

STATE OF LOUISIANA

VERSUS

BLAISE GRAVOIS

NO. 22-K-267

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

June 23, 2022

Susan Buchholz
First Deputy Clerk

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Susan S. Buchholz
First Deputy, Clerk of Court

**IN RE** BLAISE GRAVOIS

**APPLYING FOR** SUPERVISORY WRIT FROM THE TWENTY-THIRD JUDICIAL DISTRICT COURT, PARISH OF ST. JAMES, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE KATHERINE TESS STROMBERG, DIVISION "C", NUMBER 84,79

Panel composed of Judges Susan M. Chehardy,
Marc E. Johnson, and Robert A. Chaisson

## WRIT GRANTED, IN PART; WRIT DENIED, IN PART; STAY DENIED

Relator, Blaise Gravois, seeks expedited review and requests a stay of execution of the district court's June 2, 2022 ruling denying, in part, his motion to quash a subpoena issued by the State in connection with this criminal case and requiring relator to disclose to the State certain materials—including engagement letters and billing invoices. For the following reasons, we grant relator's writ in part; deny the writ in part; and deny the request for a stay.

On September 8, 2020, relator, Mr. Gravois, the former director of operations for the Parish of St. James, was charged by bill of information with five counts of malfeasance in office for allegedly misappropriating Parish assets.[1] On January 7, 2022, the State filed a motion for the district court to determine if Mr. Gravois's Sixth Amendment right to conflict-free counsel has been violated on the basis that his lead counsel, Matthew Chester, and associate counsel, Emily Kessler, of the law firm of Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. (the "Firm") have an actual conflict of interest in its representation of Mr. Gravois in this criminal matter. The State alleges that a "conflict" exists because the Firm has taken on the dual role of representing Mr. Gravois for the criminal charges brought against him, as well as representing him in a civil matter demanding insurance proceeds from St. James Parish Government's insurer, Berkley Insurance Company, who provides coverage for the payment of public employees' criminal

---

[1] The bill of information was filed after a previous grand jury indictment based on the same facts was quashed without prejudice on March 11, 2020, as a result of grand jury secrecy violations.

22-K-267

attorneys' fees, if the criminal matter is dismissed with prejudice or the defendant employee is found not guilty after trial.[2]

On May 23, 2022, the district court held a status conference, setting hearing dates for pending pre-trial motions. In connection with its conflict motion, the State indicated at the status conference that it would be seeking a subpoena *duces tecum* for issuance to the "custodian of records" for the Firm, seeking (1) all retainer agreements between Gravois and lawyers at the Firm related to criminal cases, civil claims for payment of attorneys' fees, and claims against Berkley Insurance Company; (2) billing records related to criminal proceedings against Gravois and claims against Berkley Insurance Company; and (3) any and all correspondence between the Firm and various attorneys and firms, who may have represented Berkley Insurance Company as it relates to Mr. Gravois' payment, recovery, or collection of criminal attorney's fees. The district court signed the subpoena *duces tecum*.

Mr. Gravois filed a motion to quash the State's subpoena *duces tecum* on grounds that the State failed to make a *prima facie* showing of a conflict. Mr. Gravois denied there was a contingency fee arrangement between him and the Firm. He maintained that the State conceded it had no evidence and now seeks production of the privileged records to support its conjecture. Mr. Gravois asserted that the State failed to include correspondence to the St. James Parish Council, which showed monthly invoices from the Firm based on hourly rates in differing amounts. Mr. Gravois denied that his counsel represents him in connection with his claims against the Parish Council's insurer. Also, Mr. Gravois argued that the State's request for records concerning engagement letters and/or billing records should be rejected because it seeks documents and information protected from disclosure by the attorney-client privilege and/or work product protections. He asserted that some of the requested information would reveal the work performed by counsel, strategies pursued by counsel, and the nature of services rendered by counsel.

In its opposition to Mr. Gravois' motion to quash, the State averred the billing records related to Mr. Gravois' criminal defense are not subject to the attorney-client privilege citing *In re Lavie*, 00-2753 (La. 10/5/00), 772 So.2d 77. The State argued that the issue in this case is not necessarily the manner in which the Firm billed Mr. Gravois, but rather, the payment of the fees incurred. According to the State, Mr. Gravois' fees have not been paid because payment is contingent on recovery from either the Berkley insurance policy or a St. James Parish ordinance providing for reimbursement of attorneys' fees for criminal defendant employees should they be acquitted or the criminal matter against them is dismissed with prejudice. The State argued that a conflict of loyalty has arisen triggering the exception to the attorney-client privilege found in La. C.E. art. 506(C)(3).[3]

---

[2]     The State has alleged that an independent lawyer should be appointed because Mr. Chester has consistently and erroneously advised Mr. Gravois of an incorrect element of the charged crime, rebuffed any cooperation by Mr. Gravois with the State, and rejected a misdemeanor plea for Mr. Gravois.

[3]     Under Rule 1.5(d)(2) of the Louisiana Rules of Professional Conduct, a lawyer is prohibited from entering into a contingency fee arrangement for representation of a defendant in a criminal case. Here, the State contends there is a *potential* conflict of interest between the Firm and Mr. Gravois due to the alleged contingency fee arrangement existing between them which *could* give rise to an actual conflict of interest. Additionally, the State contends the Firm has breached its duty to provide conflict-free representation in violation of Mr. Gravois' Sixth Amendment rights and the Rules of Professional Conduct 1.7(a) due to an actual conflict of interest that prohibits the Firm from rendering effective legal assistance to Mr. Gravois.

Mr. Gravois' motion to quash the State's subpoena *duces tecum* came for hearing on May 31, 2022, and, after hearing argument from counsel, the district court took the matter under advisement. On June 2, 2022, the district court issued a judgment with written reasons, granting Mr. Gravois' motion to quash in part and denying the motion in part. Mr. Gravois now seeks this Court's review of the district court's judgment.

In ruling on Gravois' motion to quash, the district court considered and ruled as follows:

**(1) Whether the State has made a showing that a potential conflict of interest exists:**

Based on its review of the exhibits attached to the State's motion for the district court to determine if Mr. Gravois' Sixth Amendment right to conflict-free counsel has been violated, the district court determined that the State's allegations of a potential conflict of interest between Mr. Gravois and his chosen counsel in this criminal matter were not based on pure conjecture. Having concluded that the State adequately established the *possibility* of a conflict of interest exists affecting Mr. Gravois' Sixth Amendment rights, the district court determined that it must now decide whether separate counsel must be appointed for Mr. Gravois or whether the potential risk of a conflict of interest is too remote to warrant separate counsel. Further, the district court concluded that having been alerted to the *possibility* of a conflict of interest, it must conduct an evidentiary hearing to ascertain the existence and nature of the conflict, and to determine if Gravois' Sixth Amendment right to conflict-free counsel has been violated, which warrants discovery. *See Holloway v. Arkansas*, 435 U.S. 475, 484 S.Ct. 1173, 55 L.Ed.2d 426 (1978).[4] Therefore, the district court denied Mr. Gravois' motion to quash the entire subpoena *duces tecum*.

**(2) Whether the retainer agreements between Mr. Gravois and Mr. Chester, the Firm, and Kerry Miller are privileged:**

The district court determined that any contracts or engagement letters responsive to numbers 1-4 in the State's subpoena *duces tecum*[5] are relevant to the State's conflict motion regarding Mr. Gravois' Sixth Amendment rights, and are excepted from the attorney-client privilege under La. C.E. art. 506(C)(3). Consequently, the district court denied Mr. Gravois' motion to quash as it relates to number 1-4, and ordered him to produce to the State any retainer agreements between Mr. Gravois and the Firm.

**(3) Whether the billing records related to criminal proceedings against Mr. Gravois and claims against Berkley Insurance Company are privileged:**

---

[4]    *See also State v. Cisco*, 01-2732 (La. 12/3/03), 861 So.2d 118, 132, *cert. denied*, 541 U.S. 1005, 124 S.Ct. 2023, 158 L.Ed.2d 522 (2004).

[5]    Items 1 through 4 of the State's subpoena *duces tecum* request production of any retainer agreements between Mr. Gravois and Firm related to (1) all pending criminal cases; (2) any civil claim for payment of criminal attorney fees; (3) any claim for payment of attorney fees against Berkley Insurance Company; and (4) any claim for payment of attorney fees against St. James Parish Government.

3

The district court determined that the billing records requested in numbers 5 through 7 of the State's subpoena *duces tecum*[6] are also not privileged under the exception in La. C.E. art. 503(C)(3) and should be produced to the State. The district court ordered that the records are to be produced after redacting and/or excising all references to the nature of services, the reasons for seeking legal advice, strategies pursued by counsel in anticipation of ongoing litigation, as well as any mental impressions, conclusions, opinions, and legal theories of an attorney.

**(4) Whether the State has demonstrated the relevance of the written correspondence between the Firm and various attorneys and firms who may have represented Berkley Insurance Company as it relates to Mr. Gravois' payment, recovery, or collection of criminal attorney's fees:**

Insofar as the documents requested by the State in items 8 through 14 of its subpoena *duces tecum*,[7] the district court granted Mr. Gravois' motion to quash production of those documents on the basis that the State failed to demonstrate how the correspondence between Mr. Gravois' counsel and third parties would be relevant to demonstrating an irreconcilable conflict of interest.

In the instant writ application, Mr. Gravois' counsel argues that the district court erred in concluding that the State's alleged "conflict" theory is more than pure speculation and conjecture as it "is factually untrue, and is devoid of any legal support whatsoever." Further, Mr. Gravois argues the district court erred in "ordering the production of privileged and confidential materials, including engagement letters and partially-redacted billing invoices, on the basis of an exception to the [attorney-client] privilege that has never been applied in circumstances like those presented by this case." According to Mr. Gravois, the district court's ruling has the potential to irreparably harm the attorney-client privilege, the integrity of the proceedings, and the privilege itself.

At the hearing, the judge specifically asked defense counsel whether the Firm engaged and agreed to represent Mr. Gravois in this criminal matter on a contingency fee basis or an hourly basis. In response, defense counsel stated, as an officer of the court, that the Firm is representing Mr. Gravois on an hourly basis and that regardless of whether Mr. Gravois is convicted or acquitted, or the case is dismissed with or without prejudice, he is responsible for paying the Firm the attorneys' fees that he has incurred. In other words, defense counsel represented to the district court that payment of the attorneys' fees Mr. Gravois has incurred is not contingent on anything. Defense counsel urges here that simply because the incurred fees may ultimately be paid in whole or in part by a third party, such as Berkley Insurance Company or a former employer, under certain conditions, does not transform the hourly billing arrangement between Mr. Gravois and the Firm into a contingency fee arrangement. Consequently, defense counsel argues the

---

[6] Items 5 through 7 of the State's subpoena *duces tecum* request production of all billing records for the Firm's representation of Gravois in (5) all criminal proceedings in the Twenty-Third Judicial District Court Parish of St. James; (6) all claims against Berkley Insurance Company for the payment of any and all fees arising out of criminal charges out of the Twenty-Third District Court Parish of St. James; (7) all criminal proceedings from the Parish of St. James.

[7] Item 8 of the State's subpoena *duces tecum* requests production of any and all correspondence between the Firm and various other law firms and attorneys concerning payment, recovery, and/or collection of criminal attorney's fees on behalf of Mr. Gravois. Items 9 through 14 of the subpoena *duces tecum* request production of any and all correspondence between the Firm and the St. James Parish Council members concerning payment, recovery, and/or collection of Mr. Gravois' criminal attorneys' fees, and/or the drafting of, and/or the adoption of any ordinance for the payment for criminal attorney fees for Mr. Gravois or any other person on behalf of Mr. Gravois or any other public official.

4

district court erred in ordering the Firm to produce privileged information relative to its relationship with Mr. Gravois to assist the State to prove the existence of a "conflict".

To the extent the documents the district court ordered Mr. Gravois and the Firm to produce violate a privilege that was not waived, we agree with Mr. Gravois that the trial court erred.

Article 732 of the Louisiana Code of Criminal Procedure governs the issuance of a subpoena *duces tecum* and provides:

> A subpoena may order a person to produce at the trial or hearing, books, papers, documents, or any other tangible things in his possession or under his control, if a reasonably accurate description thereof is given; but the court shall vacate or modify the subpoena if it is unreasonable or oppressive.

Generally, parties may obtain discovery regarding any matter which is relevant to the subject matter involved in the pending litigation, however, discovery of privileged information, including confidential communications between a client and his lawyer, or records protected from disclosure by attorney-work product protections is not allowed. *See* La. C.C.P. art. 1422. La. C.E. art. 506 codifies the attorney-client privilege in Louisiana and it states, in pertinent part:

**A. Definitions.** As used in this Article:

(1) "Client" is a person … to whom professional legal services are rendered by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from the lawyer.

(2) "Representative of the client" is:

(a) A person having authority to obtain professional legal services, or to act on advise so obtained, on behalf of the client.

…

(3) "Lawyer" is a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation.

(4) "Representative of the lawyer" is a person engaged by the lawyer to assist the lawyer in the lawyer's rendition of professional legal services.

(5) A communication is "confidential" if it is not intended to be disclosed to persons other than:

(a) Those to whom disclosure is made in furtherance of obtaining or rendering professional legal services for the client.

(b) Those reasonably necessary for the transmission of the communication.

…

**B. General rule of privilege.**  A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication, when the communication is:

(1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer.

(2) Between the lawyer and a representative of the lawyer.

(3) By the client or his lawyer, or a representative of either, to a lawyer, who represents another party concerning a matter of common interest.

(4) Between representatives of the client or between the client and a representative of the client.

(5) Among lawyers and their representatives representing the same client.

(6) Between representatives of the client's lawyer.

**C. Exceptions.**  There is no privilege under this Article as to a communication:

…

(3) Which is relevant to an issue of breach of duty by a lawyer to the client or by a client to the client's lawyer.

**D. Who may claim privilege.**  The privilege may be claimed by the client, the client's agent or legal representative, or the successor, trustee, or similar representative of a client that is a corporation, partnership, unincorporated association, or other organization.  The person who was the lawyer or the lawyer's representative at the time of the communication is presumed to have authority to claim the privilege on behalf of the client, former client, or deceased client.

Here, the State argued—and the district court agreed—that the privileged documents it seeks to have Mr. Gravois and the Firm produce are not protected from discovery under the exception to the attorney-client privilege found in La. C.E. art. 506(C)(3) as "they relate to an alleged breach of [Mr. Gravois'] criminal attorney's duties under Rule of Professional Conduct 1.5(d)."  We disagree and hold that La. C.E. art. 506(C)(3) does not apply to exempt the requested documents from the protection of the privilege under the facts presented by this case.  The State fails to allege the most essential element of its assertion that the requested documents are excepted from the attorney-client privilege—that is, that the State, a third party, has standing to claim the privilege under La. C.E. art. 506(D) or to claim applicability of the exception to the privilege under La. C.E. art. 506(C)(3).  A clear reading of La. C.E. 506 *et seq.* reveals that it relates solely to the "Lawyer-client privilege."  Nowhere in La. C.E. 506 does it provide authority for a third party, such as the State, to obtain privileged documents by asserting applicability of an exception of the attorney-client privilege.  The trial court erred in concluding otherwise.

6

The attorney-client privilege, one of the oldest and most venerated of the common law privileges of confidential communications, serves important interest in our judicial system. *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The purpose of the privilege is to encourage the client to confide fully in his counsel without fear that his disclosures could be used against him by his adversaries. *State v. Green*, 493 So.2d 1178, 1189 (La. 1986); *Keith v. Keith*, 48,919 (La. App. 2 Cir. 5/15/14), 140 So.3d 1202, 1208.

After careful review of the record, contrary to the district court's ruling, we find that the "conflict" theory posited by the State is speculative at best and is based on nothing more than pure conjecture. To infringe upon the attorney-client privilege existing between Mr. Gravois and his attorney by ordering the production of documents that are clearly protected by this privilege—or by the work-product privilege, or any other privilege that may apply in this case—based on the *possibility* that *if* Mr. Gravois is convicted, he *may* in the future file an ineffective assistance of counsel claim due to a *possible* conflict of interest, would have a chilling effect on confidential communications between a client and his lawyer, and tend to erode the purpose of the attorney-client privilege.

We note that after dismissal of *Gravois I*, Mr. Gravois submitted a request to Berkley Insurance Company, the insurer for the St. James Parish Council, for reimbursement of fees he incurred under Section 78-3 of the St. James Parish Code of Ordinances, which allows for reimbursement of incurred fees for Parish employees under certain circumstances, including where the hourly rates charged were reasonable and the hours spent were necessary. In his request, Mr. Gravois included a summary invoice, including no narrative description of the legal work performed. Pursuant to La. C.E. art. 502(A), "A person upon whom the law confers a privilege against disclosure waives the privilege if he … voluntarily discloses or consents to disclosure of any significant part of the privileged matter." Thus, with regards to the billing invoices that Mr. Gravois (or his counsel on his behalf) previously submitted to the Parish Council or its insurer, any privilege as to these invoices was effectively waived and, thus, we find no basis to overturn the district court's judgment insofar as it ordered Mr. Gravois to produce these invoices to the State.

For the foregoing reasons, we grant Mr. Gravois' writ application in part and reverse that portion of the district court's June 2, 2022 judgment that denied the motion to quash production of Items 1-7, and deny the writ in part to the extent that the attorney-client privilege has been waived as to certain documents that fall within Items 1-7. Mr. Gravois and the Firm are ordered to produce only those documents in Items 1-7 for which the attorney-client privilege has been waived due to their submission to third parties. Mr. Gravois' request for a stay is denied.

Gretna, Louisiana, this 23rd day of June, 2022.

**SMC**
**MEJ**
**RAC**

7

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
INTERIM CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF DISPOSITION CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE DISPOSITION IN THE FOREGOING MATTER HAS BEEN TRANSMITTED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 4-6** THIS DAY **06/23/2022** TO THE TRIAL JUDGE, THE TRIAL COURT CLERK OF COURT, AND AT LEAST ONE OF THE COUNSEL OF RECORD FOR EACH PARTY, AND TO EACH PARTY NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**22-K-267**

### E-NOTIFIED

23rd Judicial District Court (Clerk)
Hon. Katherine Tess Stromberg (DISTRICT JUDGE)

Matthew S. Chester (Relator)
Robin C. O'Bannon (Respondent)

Charles S. Long (Respondent)
Emily Olivier Kesler (Relator)
Lindsey D. Manda (Respondent)
Donald D. Candell (Respondent)

### MAILED

Kenneth M. Klemm (Relator)
Attorney at Law
201 Saint Charles Avenue
Suite 3600
New Orleans, LA 70170

Honorable Ricky L. Babin (Respondent)
District Attorney
23rd Judicial District Court
Post Office Box 1899
Gonzales, LA 70707